I move to grant the motion. Thank you. I would simply comment that I'm pleased to say, pleased that Taylor Gooch chose to come to this court as a law clerk. He was taught and trained at the University of Pennsylvania Law School by one of my former law clerks, Polk Wagner, so I knew he was well trained when he came here and he's performed beautifully. I now have two motions to make regarding hopefully new members of the bar of our court. It's my pleasure to move the admission in alphabetical order of Abigail Armando-Reeves, who's a member of the bar in good standing in the highest court in New York. I have knowledge of her credentials and I'm satisfied that she possesses the requisite qualifications. I also move the admission of Anna Elizabeth Sahlstrom, who's a member of the bar in good standing in the highest court in the state of California. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. I can make those attestations because both of these women have served for approximately the last 12 months as law clerks in my chambers. And in the course of their service with me, it's become clear to me that they are not only highly intelligent, well-prepared, thoughtful people, but they also are of the highest character, moral and otherwise. And so I'm delighted to propose their admission to my colleague and I hope that they will get a favorable vote. Judge Morrell, I have also had the pleasure of getting to know these young women and enthusiastically grant the motion. I'd also like to recommend, thank you for voting, I'd like to note that in the courtroom today, Ms. Rye's mother has come to witness this great event and I think she has a camera. And if possible, I'd like to request from the presiding judge that the mother be allowed to take a picture at the appropriate time. Absolutely, I think we have somebody here on our end, too, for photographs. So why don't we rise and the oath will be administered. I pledge allegiance to the flag of the United States of America, and to the republic for which it stands, one nation, under God, indivisible, with liberty and justice for all. Congratulations. Okay. First case on the docket this morning is 15-1025, McPherson v. Technology v. Nazy. Mr. Nagel, whenever you're ready. Whenever you're ready. Thank you. Good morning, Your Honors. It is a properly certified claim containing a definite, unqualified, some certain, which was never questioned or retracted, become defective years after when the appellant narrows the claim after discovery. The answer under this court's precedent and the CDA is a resounding no. But one panel of the board, without notice to the parties, years after the certification, decided that the claim was actually two claims, and that the some certain was only superficial, when neither the contracting officer, experienced Nazy counsel, nor the two ASPCA panels who had issued extensive decisions on this case beforehand, had ever challenged that certification. Why did you drop the... I don't know how to call them anything other than a claim, but why did you drop the claim for impact damages? Because they were unnecessary, Your Honor. Because of what? It was unnecessary. At Joint Appendix 45, we made it very clear that that basis was interconnected with the first basis, the primary basis, which is the Superior Knowledge Doctrine. Everything but for the violation of the Superior Knowledge Doctrine, those consequences would not have occurred. I don't understand. You have 40 separate impact items that are line items, and each one of them has a precise dollar amount attributed to them. I don't see how that is immediately clear that that is what you would be seeking to recover in a quantum merit situation. The quantum merit... That's the claim that's still on the table. Well, Your Honor, the $4.8 million and the $610,000 for liquidated damages was never retracted. We basically said, we don't need to prove those specific impact damages because under JA 45, it is still connected. It is still based on the primary basis, which is the Superior Knowledge Doctrine, but for the violation of the Superior Knowledge Doctrine. Why don't you take one of the impact damages, any one you want, and then explain to me why it's necessarily connected to the problem, from your perspective, that the government knew that it would cost more to build a new building, but they didn't tell you. Yes, Your Honor. The Navy wanted a brand new firehouse, but they estimated that that would cost $8.15 million. They told offerors they could propose either renovation or new construction, but they recognized they only had the money for renovation. The appellant to small business bid $3.99 million, less than half of the government estimate. I know what it was. What I was trying to do, I'm just trying to pick out one of the items of the impact damages. Pick one. Take, Your Honor, for example, the sound attenuation issue. There was obviously not a meeting of the minds because the appellant bid so low as to what exactly the Navy expected. If the Navy had fulfilled its duties under the Superior Knowledge Doctrine, and specifically... For example, I agree about one that came up in the summary judgment motion. This was blast-proof windows. Yes, Your Honor. And so there was a claim about reading the spec on blast-proof windows. Wouldn't blast-proof windows be the same whether you're replacing the windows in a rehab as opposed to new? No, Your Honor. The entire framework around that could be substantially affected in terms of length of time it takes to do that. You've got to build up everything around that. Cheaper to put in new ones than to rehab the old. Depending on the rest of the construction, Your Honor. What I'm trying to say is your argument is that all of the damages that you add up to the penny, the damages that were in your R.E.A. and your certified claim are to the penny accounted for by all of your impact damages and other specific claims. To the penny. Yes, Your Honor. All of which stem from the violation of the Superior Knowledge Doctrine. How do I know they don't stem from? You say that. Yes, Your Honor. Where's the proof that all of those damages would have been incurred regardless of whether you were building new or whether you were building by rehabbing? Well, first, Your Honor, that goes to the merits. It does not go to jurisdiction, we would submit. That is something we would have to prove at the hearing. But we would deny that chance when five and a half years into the litigation, the board suddenly decided we have no jurisdiction either. Jurisdiction, as you know from your experience, courts frequently jurisdictional defects are missed. They're overlooked. And I agree with you, this is coming up at the tag end. But it comes up at the time when what you've done is shucked away from the case, the piece of the case, the impact damages. There'd be, if only you'd asked for impact damages, there's no question that you had a certified claim with a sum certain. Right? Yes, Your Honor. And that's by having stripped that away, you focused the spotlight on what was left. Yes, Your Honor, because those impact damages were unnecessary because of JA 45. It seems to me, from my perspective, that what you have to do is to convince us that there was a mistake here in saying that there were two claims instead of one. Yes, Your Honor. Because if there are two claims here, I think your case is substantially weaker than if it's only one. Yes, Your Honor. There's only one claim because there can only be one claim. There is no such thing as a pre-award claim under the contract. I understand, but doesn't our case law say that claims are different claims if they're based on different theories and they have different theories of relief? No, Your Honor, it depends on the transgression that we are talking about. If we were talking, if all at once I suddenly started saying in front of you. How do you, you think K-Con is not applicable here? No, Your Honor, I think there are various aspects of K-Con that are directly applicable. Certainly, people can refine, revise their claim as they should do after discovery. I appreciate that, but it seems to me that that's really where the rubber hits the road. The government relies heavily on K-Con. Yes, Your Honor. They say K-Con, you sit down. All they have to do is cite K-Con. You say, you cite K-Con and say, government, you sit down. So how am I supposed to figure out which one of the two you write on the K-Con case? Your Honor, it depends on how refined, how varied the facts diverge. The government at page 19 of its brief states, well, they're totally different facts, totally different facts. It's a different time period. No, there are different facts involved in whether or not the government did or did not know about the $8 million estimate for new and whether or not that was a real number and relied on at the summary judgment stage. The judges on the summary judgment case said, we don't even think that necessarily was a real number. Right? Yes, Your Honor. So that whole factual dispute on your unconscionability, superior knowledge claim would be whether or not that number was real. Did the government know about it? Did the government have an investment in that number? Because if the number was illusory, your case would go away. So that's the factual dispute, as I understand it. Yes, Your Honor, and that goes to the merits, but it does not go to jurisdiction. No, but when you're talking about is a claim the same, I do believe the precedent tells us to inspect the factual underpinnings of the claim to ascertain whether the facts are the same. Yes, Your Honor. Right. Well, for your impact damages claim, you didn't need any factual basis pertaining to whether or not the $8 million figure even existed. Why? Because you were making post-award claim, correct? We are proving the pre-award damages because they... You were making a post-award claim specific to the penny in damages based on things that had nothing to do with whether or not there had ever been an $8 million estimate. Oh, absolutely not, Your Honor. Tell me then why. If the government had fulfilled its duties under superior knowledge doctrine and said, MZT, our estimate is 0.1 million. How can you guys, a small business, come in and bid less than half of that, 3.99? Have you considered different views about sound attenuation? Have you considered different views about glass-proof windows? Have you considered the ground you might have to excavate? If those had come up and MZT had said, shoot, maybe you're right, maybe we should bid closer to that, then those impact damages, we wouldn't have made an issue of them because they already would have been included within our claim and we would have prepared for it and we would have bid accordingly. Maybe some, but not all, right? Yes, Your Honor, but again, that goes to the merits. It does not go to jurisdiction. But it would then go to the specificity of the dollar amount in the claim. That's possible. But remember what you're doing. You can't just guess at a number, can you, for the requirement in a CBA certified claim. You can't just guess. You just throw a number out, right? No, Your Honor. I agree you cannot do that. The number has to be tethered. Yes, Your Honor, and it was tethered. Remember, there were three bases. Joint Appendix 45, which I keep going back to. If I may, one second, digress for a moment. What you really have to decide here today is one of two things. Either every contracting officer, experienced Navy counsel, or judge involved in this case prior to Judge James was either asleep at the switch or they recognized that the claim was one claim and the damages were set forth in the sum cert. We submit that the other judges and personnel did because they recognized that everything was inconnected because they read specifically Joint Appendix 45. When we dropped those claims. Let me ask one question about that. You had related, focusing specifically on what I'm calling the $8 million estimate for new construction, which you feel existed and wasn't conveyed to you. It seemed to me you were making two arguments. You're making just a flat-out superior knowledge argument, and then you were making an unconscionability claim. Yes, Your Honor. Now, let me ask one. It was unconscionable because they had superior knowledge that they didn't convey to you. Is that the theory? A little bit more precise than that, Your Honor. During discovery, we discovered that no other bid for new construction was anywhere close to us. We didn't know that before. Well, not anywhere close. I mean, they were less than $8 million. They were less than $8 million, but the closest bid was $8 million. Somewhere between the two of you. But remember, a lot of those bids were for renovation. What's the difference between you dropped your unconscionability claim, you waived it off. Well, if you waived that off, why aren't you, in essence, waiving off your superior knowledge claim? They're the same. No, Your Honor. The superior knowledge, first of all, I'm not sure. I don't agree that we waived unconscionability. I thought you said you weren't going to pursue unconscionability any further. I thought we weren't going to pursue unilateral mistake anymore, Your Honor. I may be wrong, but don't waste your time answering that. I'm sorry. Okay. No, no, no. Not a problem, Your Honor. To go back, then, in the remaining time I have. Well, you're into your rebuttal, so you want to make a short statement and save some. Yes, Your Honor. There is only one claim. There cannot be a pre-award claim. That's just one shoe dropping. That's an element. But the damages must occur post-award. That's what we put in the claim as the impact damages. But they all flowed from it. They would not have occurred absent the violation of the superior knowledge doctrine. Now, when we waive the quantum merit, it's still all based on the same basic facts. Again, Your Honor, you've got to conclude that either everybody else involved in the case for the previous five and a half years, including those two prior panels, was asleep at the switch, or they recognized that it is all one interconnected case. Now, the government... That's what we have to decide, whether they were asleep at the switch or... Yes, Your Honor. But if you take a look at that decision on the motion for summary judgment, that is a very detailed, analytical, comprehensive decision. Weren't there different judges, right? Yes, Your Honor. Two of the judges were different. The government appears to recognize some of the problems. It never addresses the issue of superficial... The judge in common didn't dissent. I'm sorry? The judge in common didn't dissent. Correct, Your Honor. So that's... It did not dissent in either case. That's unhelpful to you. It would have been helpful to you if there had been a dissent from the judge in common saying, hey, wait a second. This is unfair. They're playing. There is certified claim here. The judge who was on the earlier panel that didn't raise the jurisdictional issue joins the opinion saying there's no jurisdiction, leading me to think that that judge said, whoops, I was asleep at the switch. If they recognize the issue at all. There's nothing in the decision that references at all to JA 45 and the interconnectability of the basis. People are allowed to present alternate views. They have one vote. Your Honor, the bottom line question, as I said earlier, comes down to whether or not UNS has created a second claim by throwing out the first one. I mean, isn't that really what it boils down to? I think in a nutshell it is, Your Honor. And I've never before heard a case where by narrowing your claim, you multiply it. The government's cases all deal with the situation all at once you come up with brand new facts, totally new arguments, totally unconnected, never before seen in the eyes of man in the case. If you've subdivided, which you did do, then the question is whether that original number relates to the subdivision. And I think the reason why you got ruled against down below was that they looked and said, whoops, he's not even standing on that old number anymore. He's got a new theory for calculation of damages, which is to say you take the $8 million, you take the amount of money that we've already been paid, and then you give us something in between, which we say is the amount we were hurt. Yes, Your Honor. Right. And that's in a very, very different calculation than the way the $8 million got calculated, pardon me, the money you're asking for in your REA CDA claim got calculated, because it got calculated entirely off of the impact damages. Yes, Your Honor. There were actual incurred costs, and we proffered the idea of quantum merit because by that time we could see what the other bids were, which we did not know beforehand. So we were able to say, okay, then give us the difference between this and this greater amount, which is less than. Well, you have two theories of relief, and you have two computations, right? Yes, Your Honor. I don't know what you want to say, Yes, Your Honor, because you may be walking into a trap, but you have two theories of relief. One is your impact damage, et cetera, and your other is superior knowledge, yada, yada, right? And you have two very different calculations. And our case law says whether cases are whether it's one big claim or whether it's a bunch of little claims, you have to look at the facts. You have to look at the relief asked for. This is going to be the government's argument, that you then look here and you say, well, the relief being asked for is really different. Yes, Your Honor. It's dollars, but it's different in the way it's being computed. And we are not aware of any case where the damage calculation method, whether you go from total cost to modified cost to actual cost, was ever decided that that relates back five and a half years previously and invalidates the original certification. Your Honor, I think I'm done. Okay. We'll restore a couple minutes for rebuttal, and let's hear from the government. Thank you, Your Honor. Mr. Conner. Thank you, Your Honor, and may it please the Court. The Board's dismissal for lack of jurisdiction should be affirmed because after the certified claim, during the pendency of the Board appeal, the appellant in this case brought a new claim, and they withdrew the entirety of the certified claim that was presented to the contracting officer. What do you mean a new claim? You think there was no basis in the REA and the original CDA claim for a superior knowledge claim? Yes, there was a reference to a superior knowledge claim. So it's not new? So it's not new? The superior knowledge theory is not new. That's correct. Excuse me? The superior knowledge theory is not new. You said it was. Yes, it's new. Aren't you going to be accurate? Yes, I would like to be accurate. The reason why it's new, however, is that the relief that was sought during the pendency of the Board appeal was rescission of the contract and quantum error, neither of which was ever presented to the contracting officer for decision. The certified claim was based on 85 very discreet, very specific, B, they referred to betterment and variance claims. But that's not the basis on which the decision was made below it. Yes. The failure to have certified a quantum error rescission claim, right? Yes, the basis. Are we allowed to decide a case on grounds other than it was decided below it? Yes, the court. Why? Because jurisdiction is a legal question and the court can affirm the decision for lack of jurisdiction on alternative grounds. The basis for the dismissal at the Board was the lack of some certainty. Well, the Board decided that it lacked jurisdiction for a specific reason. You're telling us that the Board lacked jurisdiction for a different reason. Yes. You're saying because there was no rescission quantum error claim ever certified, ever made to the contracting officer, there was no jurisdiction. Yes. I'm still asking the cheater a question. Could we rule on that? Yes. Why? Because the court can affirm. Again, the question of jurisdiction is a legal question and which the court reviews without any deference to the lower court. So the court can affirm on an alternative jurisdiction. What you're arguing to your colleague is that it's really not a new claim. Doesn't your colleague view this as one big gamish, right? So they're now saying when you want to know how much money you should give us for the government's failure to honor superior knowledge, you should use a quantum error calculation, right? Yes. And in order to use the quantum error calculation, you have rescission of the contract. So why is that new? It's new because the— Are any of the facts that underlie this rescission quantum error theory different than the original claim for superior knowledge? The original claim, there's one reference— But the facts are the same, right? No. The facts in the certified claim, and the certified claim is hundreds of pages long. I understand that, but I'm just trying to get at whether or not this is actually a new independent claim as opposed to a claim that is part of the whole gamish of what the contractors are arguing. Yes, we believe it is a new independent claim. But in addition to that, even if it's viewed that the claim was asserted in the first instance in the certified claim, that specific what is referred to as the pre-award claim, which is a language that was used by MACRO-Z in their first appellate brief and by the board, that lack of— I hear you leading with this argument. You're not waving off the primary argument in the briefs, are you? No, certainly not. The pre-award claim that was asserted in the certified claim, lack of some sort, all of the relief, all of the damages that were sought in the certified claim related to the post-award conduct, the defective specifications, the constructive change, and then there were, again, 85 betterment and invariance claims, which are attached and which we include in the appendix at J344-500. And these are very specific items, things like moving a drain, things like altering a kitchen. For example, at J348, there's an example of an attic area increase. And the appellant goes through the basis of entitlement, betterment to project, a detailed narrative of the issue, the cost of that, the associated delay. So where would he have gotten the amount for having a sum certain with regard to the pre-award damages? I mean, there's some numbers that, you know, you're just at the beginning, you're just making an allegation. He obviously didn't have the documents. He didn't know anything about this until he did some discovery. So what number is he supposed to come up with? What would have been the correct number in your view? The same number that the appellant argued before the board, the $8.15 million minus the amount paid. They had all that information when they filed the certified claim. The $8.15 million estimate is repeatedly referenced throughout the certified claim. And so what is that number? We're pretty close, right, in terms of what he asked for and what the difference between those two numbers are? I think it's about a million dollars off. But the $8.15 million is what MACRA-Z contends was the government's new construction estimate. We dispute that, as was detailed in the motion in part for summary judgment. But that is their basis for damages. And the board below correctly noted that that specific relief, the $8.15 million minus the amount they'd been paid, approximately $3.5 million, that that, some certain, was not presented to the contracting officer in the certified claim. And so that was the basis of the board's decision that there was lack of jurisdiction. It goes hand-in-hand with our alternative argument, which is that MACRA-Z asserted a new claim for the first time during dependency of the board appeal and not to the contracting officer. Can I ask you, what's the practical implication? Is there any way... I know the time frames are tight. I mean, is there a way that at some point they could have withdrawn and they still wouldn't have been time-barred to amend their original certified claim? Was there a window there that they... Was that doable? I'm not sure of the answer to that question because I don't know how long they waited after the contracting officer's decision to file their board appeal. They would have one year from doing that. And so I'm not sure of the answer to the question. But I would imagine that they would, had they withdrawn this claim sort of right away, they would have had an opportunity to pursue the pre-award claims to the extent they adequately disclosed them to the contracting officer. When we say right away, I mean, they didn't... Obviously, they didn't know that the case was going to turn this way. Right away meaning as soon as somebody ruled against them and pointed this out? Or as soon as they did discovery and found out that the government had documentation with regard to superior knowledge, or what? Your Honor, they asserted the superior knowledge. They stated superior knowledge in their initial certified claim. And that was in 2008. I'm sorry? In 2008. That's when they made their claim. Yes. And then it's four years later, 2012, when you get a summary judgment. Yes. So time is slow here, right? Yes, Your Honor. And then it takes two more years to August 14 before we get the final judgment. Yes, and I think it's important to note the reason why the case turned in such a fashion. It wasn't the conduct of the government or the Navy that caused it. The plaintiff filed a certified claim that was very specific, that has very specific damages, and years into litigation, they decided to withdraw all of those claims. Why? I don't have any reason. And two little tiny portions were settled, right? Like two little things. Yes. But why? I just don't understand why they withdrew the impact damages post-award. I can't answer for why that happened, but Your Honor's point about the contracting officer granting two of those claims goes to the fundamental nature of the contract dispute act. The contracting officer is supposed to get an opportunity to assess the claims. And when they submitted these 85 claims, the contracting officer did have that opportunity. The contracting officer did not have the opportunity to rule on the claims that MacRosie ultimately put forward before the board. But the contracting officer, did he rule on the other of the 85? I mean, did he rule against them? Is that why they withdrew them as they moved forward? The contracting officer did deny the remainder. But they continued to assert those claims throughout the pendency of the board appeal, only to later withdraw them in 2013. Was it an actual denial or a deemed denial? Was it a deemed denial or an actual denial? It was an actual denial. Because there was a one-line, oh, no, he granted two of the requests, right? Yes. And this court's precedent in KCON states, presenting a materially different factual or legal theory, example, breach of contract for not constructing a building on time versus breach of contract for constructing with wrong material, does create a different claim. And the court's decision in Santa Fe, Engineers, is instructive. Because in that case, the contractor initially came forward with challenges to three specific change orders. Then during the pendency of the case, the contracting officer and this court stated, it profoundly altered their claim. Why did the contracting officer deny the other 83? Did he say that they were subsumed in the original contract? Or what was the basis? There was not a detailed basis. Well, any basis. Can't be detailed. What was the basis? Why did he deny them? Do we have an excerpt from the denial in the record? Yes. And the denial is a J163 to 165. There's not a specific analysis as to why it was denied. But the contract officer does sort of recount the claims  a breach of contract. On J165, in a short one paragraph decision, that the claims are denied. That's not atypical. No, it's not atypical. In fact, oftentimes, or I should say sometimes, there will be a dean denial, where there will be not, there's not a decision issued, but because of that. So your view of this matter is that for this contractor to have succeeded, he should have had a certified claim that says, I have essentially two theories as to why I should have recovery. And I have two amounts that I should be awarded, one theory and one on the other. That's what you're saying. Yes, if those were the claims. The initial certified claim, again, the some certain that was in the certified claim only related to the post-award claim. So the extent that they had a claim based on. But you're saying it only related. You're getting a stern argument from your every center saying, oh, no, it did. It's just that he didn't expressly state in his REA certified claim, oh, by the way, the money I want is the same money I would want if you ruled for me on my unconscionability superior knowledge claim. If he'd said that, he would be home free, right? Yes. And the fundamental thing the court looks to in all the cases, in all this court's cases. So it boils down to, is he right? When he says, what I suffered by way of laws was the same either way. That's what he's saying. He said he agrees that if he went to trial, it may be proven that he wasn't entirely right. The number wasn't exactly the same. But he says, I'm ballpark close enough. The fundamental operative facts that relate to that pre-award claim have nothing to do with the 85 specific claims that add up to some certain that's in the certified claim. Well, we don't know that. He's saying it did. He said, I once suffered the same thing either way. But the 85 claim items relate to macro disease allegations that the government did not live up to the contract. The pre-award claim is asking for rescission and quantum merit. And the quantum of damages that they seek have nothing to do with the specific 85 items that add up to some certain certified claim, but rather simply state, we want the difference between your estimate and what we were paid. The court in Katon stated that identifying whether separate claims exist is important. And so it was entirely appropriate for the board below to look at certified claims and determine that there were two different claims, one of which had a some certain, and one of which didn't. Well, sir, but the elephant in the room here is that we really don't want contractors to start splitting their claims up. First, we don't want to split their claims up to avoid the $100,000 limit for certification. And you don't want that either. That's right. But as a matter of good administrative and judicial policy, we don't want to have a lot of different cases going on, right? Yes. And we are not arguing that. It's nice that the contracting officer gets the hold of them, but it's not worth it. Yes, and we certainly are not and did not mean to suggest that. But what is important is for the contracting officer to have an opportunity to assess what the claim is. And in this case, the contracting officer would not be given that opportunity, because the certified claim and the some certain and uncertified claim is based entirely on specific claims that were withdrawn by MACRIS. What's the usual remedy in a superior knowledge case? Let's assume, just to plan it out, that's all it is, superior knowledge claim. Is the contract rescinded? It could be. Isn't it ordinarily rescinded? I don't know that it's ordinarily rescinded. I'm not 100% sure I can answer that question. Is that understood to be an acceptable result that you would get? You would get rescission if superior knowledge has been had and wasn't conveyed? Yes, that is a claim for relief that can be brought based on superior knowledge. So you're arguing that if you're making a certified superior knowledge claim, isn't it implicit that you might be asking for rescission? No, we do not believe that that is implicit. And it's MACRIS' burden to come forward and say what the relief they're seeking is. The contracting officer, and it's not as if this superior knowledge is stated throughout the certified claim. They did come forward and state the relief that they were seeking. You directed us to JA-163, which is the contracting officer's final decision. And it says, I've reviewed your request. You contend you expended $4.8 million for direct costs, indirect cost delays, and $610 for liquidated damages. So they did come forward and express a sum certain. Yes. And then on the next page, at least this contracting officer keeps referring to it as a single claim with three bases of recovery. And he lumps them all together. So it's clear from his writing that he understood the superior knowledge claim to be seeking the same $4.8 million and $610,000. Yes. And if plaintiff and if appellant were still seeking that $4.8 million based on the 85 items that's in the certified claim, this would be a different case. But appellant is not seeking the $4.8 million that they disclosed to the contracting officer. They're seeking an entirely different remedy based on entirely different facts. No, why? I mean, they allege superior knowledge. He decided after a thorough review that the claim was denied. And he understood their superior knowledge claim to be for a sum certain of $4.8 and $610,000. So the fact that they're trying to morph their claim now, maybe they're not allowed to do that. But didn't they state a sum certain? Didn't he understand them to state a sum certain? The fact that they may be walking away and asking for different damages is a different question. The lower court ruled no jurisdiction because they never had a claim with a sum certain. He understood them to be articulating a sum certain for a superior knowledge claim. Yes, there's no question that there was a sum certain that was in the certified claim. For the superior knowledge claim. That is what the contracting officer determined. But again, they're not seeking the $4.8 million anymore. They're seeking an entirely different amount based on entirely different legal theories that were never disclosed to the contracting officer. Quantum error and rescission. Does the contracting officer have to know the theory? The contracting officer needs to know the basis of the claim, the factual basis of the claim. Here, that did not happen because... Let me ask you this question, a policy question. Reflecton sets up the requirement that a CDA claim has to be specific and has to have a sum certain, right? Yes. For whose benefit does that rule exist? Who's in this system of ours? Who's the beneficiary of this ruling we have for this jurisdictional requirement? I think it's to the benefit of the contractor and the government. Isn't it the contracting officer? Yes. Right, because we want the contracting officer to understand what the nature of the claim is and what the punishment is going to be, right? Yes. Now, Judge Moore was asking you, I think, in this case, why shouldn't we think that the contracting officer knew what the theories are, right? It wasn't being misled. And he also knew how much money the contractor thought he was entitled to. Yes. The number doesn't have to be correct. You can have a sum certain that you don't win, right? Rarely do you ever get much cash. Yes, that's correct. So what's your answer to Judge Moore's question as to why on the very face of the contracting officer's decision the jurisdictional question wasn't answered favorably to the contractor? Because the operative facts that were asserted before the board, what we contend to be a new claim, are fundamentally different than the operative facts that are in the certified claim. The operative facts in the new claim before the board had nothing to do with the 85 betterment and variance claims and only related to the estimate and what they've been paid. So the basis for relief, the operative facts, and the specific relief requested was different in both claims. Therefore, two claims existed and appellant only provided a sum certain during the pendency of the board appeal, which means the board correctly ruled that it lacked jurisdiction. Okay, thank you. Thank you. Your Honor, I threw down a pretty big gauntlet in my opening talking about JA 45. Did you hear a syllable from the government about JA 45, which specifically said the second and third bases, the 48 claims, are connected to the first cases. Everything goes back to superior knowledge. The contracting officer was not misled. The contracting officer knew full well what she was deciding at that point. The facts are not materially different. We have not varied from the superior knowledge doctrine. That is in the allegation in 2008, is the allegation in 2014. If the allegation today, the numbers may have changed, but contractors are not required to be clairvoyant. You put in your claim, you come up with the best estimate for what your sum certain is, and then you go into the discovery process. If we knew in great detail in 2008 what the government's internal thinking was on source selection, somebody should go to jail because there's obviously been a leak of source sensitive information in violation of the Peer and Integrity Act. We did the best job we could at the time. The contracting officer was not misled. Experienced Navy counsel never said, oh my gosh, this is two claims. The previous judges did not. It was only when Judge James got to it and he issued the decision saying, well, this has never before been questioned that the $4.8 million covered the pre-award conduct. It was never questioned because JA 45 and the contracting officer decision made it clear that it did and that no one up to that point was misled. Damages, even on a pre-award element of a claim, have to occur post-award. That's the second shoe dropping. They coalesce, they coincide with the $4.8 million. We are not bound to $4.8 million dot dot dot, period. Whatever I gather can be proved. Thank you. We thank both counsel and the case is submitted.